**GROVE et al., Appellees,**

v.

**MATTISON, Appellant.**

[Cite as *Grove v. Mattison* (1988), 61 Ohio App.3d 252.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–298.

Decided Dec. 27, 1988.

*Michael Miller,* prosecuting attorney, and *Anne K. Tsitouris,* for appellees.

*Tyack & Wright* and *G. Gary Tyack,* for appellant.

---

STRAUSBAUGH, Judge.

This is an appeal by defendant from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, finding that defendant was the father of plaintiff Nicholas Grove.

The record indicates that plaintiff Lisa Grove ("plaintiff") gave birth to Nicholas on June 24, 1986. Thereafter, plaintiff initiated the instant suit to establish a father-child relationship between Nicholas and defendant, Samuel Mattison, Jr. Plaintiff alleged that the period of conception consisted of the months of July, August and September 1985 and further claimed that Samuel Mattison, Jr. was the father of Nicholas.

At trial, the results of a genetic test performed on plaintiff, defendant and Nicholas indicated a 93.52 percent probability of paternity with a fourteen to one paternity index. This index indicates that defendant was fourteen times more likely to be the biological father of Nicholas than any other man randomly selected of similar genetic makeup. Plaintiff's other evidence at trial consisted of her testimony and the testimony of two expert witnesses, in addition to a viewing by the court of Nicholas, plaintiff and her parents, and defendant and his parents. While plaintiff's parents are both Caucasian, defendant's mother is Caucasian and his father is black. Although defendant displays several Negroid features, Nicholas is blond, fine-haired and blue-eyed with no evidence of such features. One of plaintiff's experts testified that although it was possible that defendant was the biological father of Nicholas, there was no suggestion of Negroid ancestry in the child.

Plaintiff's medical records regarding her prenatal care, labor and delivery were also introduced. This evidence revealed a forty-week gestational age, while plaintiff's testimony established a forty-two-week gestational age at the time of Nicholas' birth. While the forty-two-week gestational age assessment was within the alleged period of conception, the forty-week gestational estimate would have placed the conception date ten days after defendant and plaintiff admitted last having sexual intercourse. Defendant also proffered testimony by two witnesses regarding sexual relations between plaintiff and men other than defendant, although these relations were outside the alleged period of conception.

At the conclusion of the presentation of evidence, the trial court found that plaintiff proved by a preponderance of the evidence that a father-child relationship had been established between Nicholas and defendant. Following

the trial court's entry of findings of fact and conclusions of law, defendant instituted the instant appeal and sets forth the following errors for our review:

"1. The trial court erred in sustaining the plaintiff's motion in limine.

"2. The judgment of the trial court that plaintiff proved by a preponderance of the evidence that the defendant was the biological father of Nicholas Grove was not supported by the evidence.

"(A) The trial court erred in failing to give appropriate weight to the hospital records submitted into evidence.

"(B) The genetic tests, in this case, did not support the finding of paternity."

R.C. 3111.12(C) provides:

"Testimony relating to sexual access to the mother by a man at a time other than the probable time of conception of the child is inadmissible in evidence, unless offered by the mother."

Under his first assignment of error, defendant contends that although the trial court properly complied with the dictates of R.C. 3111.12(C), it was nevertheless error for the trial court to exclude relevant evidence regarding plaintiff's sexual conduct with men other than defendant because of the impossible burden carried by putative fathers in this type of case. Few men would be willing to testify that they engaged in sexual intercourse during the probable time of conception with a woman who is seeking to establish paternity. It is defendant's suggestion, although not explicit in his argument, that R.C. 3111.12(C) impermissibly shifts the burden of proof to defendants in paternity actions.

We cannot agree with the argument of defendant and find that the trial court correctly followed the law and did not abuse its discretion.

The trial court properly excluded defendant's evidence regarding plaintiff's sexual conduct with men outside the period of conception. Contrary to defendant's argument that the exclusion of such evidence impermissibly shifts the burden of proof to him, to require a plaintiff to present such evidence would be to require the production of persons who may not exist. In any event, to the extent defendant has knowledge of other men who had sexual intercourse with plaintiff during the period of conception, defendant had the opportunity to join those parties as third-party defendants and require them to submit to genetic testing. In fact, defendant is simply attempting to attack plaintiff's credibility on appeal, which he failed to do at trial.

The Court of Appeals for Montgomery County held in *Quasion v. Friedman* (1959), 110 Ohio App. 166, 170, 12 O.O.2d 430, 433, 169 N.E.2d 28, 32, that in such cases:

" * * * [E]vidence is admissible to show that the mother had sexual intercourse with other men at about the time the child was begotten. However, the character of the mother is not in issue, and there is no prejudicial error in excluding evidence merely showing that the mother had intercourse with other men, if no further evidence is proffered to the effect that she actually had such intercourse, or had the disposition to have such intercourse, *at the time when the child was conceived.* * * * " (Emphasis added.)

Defendant's first assignment of error is overruled.

■ Defendant's second assignment of error mounts a two-pronged attack on the trial court's conclusion that plaintiff proved by a preponderance of the evidence defendant's paternity. Defendant first contends that the medical records evidence admitted at trial should have been given more weight by the trial court than plaintiff's testimony regarding the date of conception; that since these records established the gestational age of the child at birth, it is clear that plaintiff's last menstrual period began on September 15, 1985 with a probable conception date of September 30, 1985; and that such date is ten days after defendant and plaintiff last had sexual intercourse, which date is further confirmed by the March 28, 1986 ultrasound which revealed a 27.4 week-old fetus. Second, defendant argues that the genetic test performed in this case did not support a finding of paternity; that the genetic testing in this case revealed that the mother's blood factors matched exactly Nicholas' blood factors; and that because of this factor, it is impossible to determine which genetic factors were donated by the mother and which by the father, which problem is further underscored with the fact that the 93.52 percent probability of paternity and the fourteen to one paternity index is lower than the national standard average, and which problem is further complicated by the fact that there is no mixed race gene tables available to determine the gene frequency of biracial persons. Defendant further claims that the expert testimony offered by plaintiff suggested only a possibility that defendant was the natural father of Nicholas, such possibility not being competent, credible evidence that defendant was more probably than not the natural father of Nicholas.

As to defendant's second assignment of error, plaintiff concedes that in fact it is her burden to establish by evidence which is more reliable, more convincing, more probable and more conclusive than defendant's evidence that defendant was the father of Nicholas. However, plaintiff argues that she met that burden by the introduction of testimony that defendant and plaintiff engaged in sexual intercourse during the period of conception, which plaintiff admitted; expert testimony concerning the probability of defendant's paterni-

ty based on the genetic testing; and expert testimony regarding the probability of defendant's paternity based on the physical characteristics and racial ancestry of the parties. Although defendant claims that the medical records should have been given more weight than plaintiff's testimony, plaintiff contends that there was no medical expert testimony which either explained or interpreted the results of the medical records; moreover, the range of error for gestational age assessments was substantiated by both statistical and expert evidence.

Plaintiff argues that defendant's contention, that the genetic tests performed in this case were unreliable, is without statutory support; that R.C. 3111.10(C) allows for the introduction of statistical probabilities regarding the alleged father's paternity; and that defendant introduced no evidence to rebut the reliability of the genetic testing or to rebut the expert testimony of plaintiff's experts.

In sum, we find that, clearly, plaintiff produced sufficient competent, credible evidence going to all essential elements of her case to support the judgment. The judgment in this case is clearly not so contrary to the natural and reasonable inferences to be drawn from the evidence so as to produce an unjust result and that the trial court did not err in failing to give appropriate weight to the hospital records submitted into evidence. Defendant's second assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCormac and Bryant, JJ., concur.